## Williams v. Hays.

(Decided April 20, 1917.)

### Appeal from Knott Circuit Court.

1. Elections—Contests—Pleading.—Where both parties to an election contest, without raising any objection, try the issues on an indefinite and insufficient pleading, neither of them will be permitted, after the case has been submitted for judgment, to question the sufficiency of the pleading.

2. Elections—Sex—School Elections—Qualifications.—Under the act of 1912 (Ky. Sts., sec. 4535h), imposing upon female voters in school elections the qualification that they shall be able to read and write, it is sufficient if the voter can read in a reasonably intelligent manner sentences composed of words in common use, and of average difficulty, though each and every word may not always be accurately pronounced.

3. Elections—Sex—School Elections—Qualifications.—Under the act of 1912 (Ky. Sts., sec. 4535h), imposing upon female voters in

school elections the qualification that they shall be able to read and write, one is able to write who, by the use of alphabetical signs, can express in a fairly legible way words of common use and of average difficulty, though each and every word may not be accurately spelled.

HAZELRIGG & HAZELRIGG, B. F. COMBS and J. M. BAKER for appellant.

JOHN CAUDILL for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

At the August, 1915, election, the appellant, Willie Williams, and the appellee, Nelson Hays, were rival candidates for the office of school trustee in School District No. 3, of Educational Division No. 2, in Knott county.

The election commissioners having certified that Williams had received 34 votes, and that Hays had received 32 votes, the certificate of election was awarded to Williams.

Hays filed this action in the circuit court, contesting the election of Williams, upon the following grounds:

"That the following named voters, to-wit: A. C. Sexton, John Proffit, Lee Egerson, Wallace Venters, Bill Bates, J. B. Witt, Maggie Witt, John Adams, Tildie Short and Jane Honeycut, who were unable to read and write, cast their votes unlawfully for the defendant, and that they were each, wrongfully counted for him; and that the plaintiff received more of the legal votes at said election than did the defendant."

Williams made his answer a counter-claim, in which he charged that Julia Blair, Lucinda Hays, Floyd Sexton, John Sexton, J. J. Hall, Jr., Mary Toliver, Hattie Stidman, Alice McIntosh and Amanda Hall, voted for Hays in said election, when they were not legal voters therein.

Proof having been taken upon the question of the legality of the votes thus specified, the chancellor found that Hays had received 30 votes; that Williams had received 28 votes; and, he accordingly entered a judgment declaring that Hays had been elected. The judgment did not, however, specify the illegal votes. From that judgment Williams appeals.

1. First, it is insisted that the petition is insufficient as to the seven male voters therein specified because

their right to vote is attacked on account of their inability to read and write.

The statute giving female voters the franchise in school elections placed upon them the requirements that they should be able to read and write. Acts 1912, p. 193 (Ky. Sts., sec. 4535h). No such qualification is, however, placed upon the male voter. We are not called upon to criticise the wisdom of the legislature in making this radical discrimination against the female voter; we must read it as we find it.

It is contended that the petition attacks the male voters upon the single ground that they could not read and write—the allegation that they unlawfully voted being treated as a conclusion of law; and, consequently, that the petition only shows ground for contesting the legality of the votes cast by the three female voters therein specified. But, certainly, the petition is sufficient to the extent that it attacks the three female votes; and, being sufficient in any respect, it is a good pleading where the result would be changed if the three votes should be eliminated, as in this case. But we think the petition is sufficient to raise the question of the right of the seven male voters to participate in the election, in the absence of any objection to the pleading.

The practice is well settled that where a petition in an election contest is objectionable for want of definiteness, it should be made more specific; but, where the defendant treats the petition as sufficiently specific, the allegation that the voters who are named voted unlawfully or illegally, will be treated as a sufficient specification for the purposes of the action.

Where both parties, without raising any objection, are willing to try the issues on an indefinite and insufficient pleading, neither of them will be heard, after the case has been submitted for judgment, to raise a question as to the sufficiency of the pleading. Weller v. Muenninghoff, 155 Ky. 77; Francis v. Sturgill, 163 Ky. 670. If Williams had asked the court to require the plaintiff to specify the grounds upon which the plaintiff claimed the male voters were not legal voters, the plaintiff would have been required to do so; but, in the absence of such a motion, a petition which gives the names of the illegal voters and charges that they were not legal voters at the time they voted, will be treated as sufficient.

The only questions, therefore, that remain for consideration are the qualifications of the several voters whose right to vote has been challenged.

2. In considering the qualifications of the challenged voters, we will, in each instance, briefly refer to the ground of the objection with the result we have reached, without an extended discussion of the facts.

Considering first the plaintiff's case, we find that the record shows that A. C. Sexton, John Proffit, Lee Egerson, Wallace Venters, Bill Bates and John Adams were residents of Letcher county, and had no right to vote in this school election, held in Knott county.

The test of one's ability to read and write was stated in Justice v. Meade, 162 Ky. 423, as follows:

"It is, of course, impracticable to lay down any very accurate test for determining the voter's ability to read and write within the meaning of the statute. In a general way, we may say it is sufficient if the voter can read in a reasonably intelligent manner sentences composed of words in common use, and of average difficulty, though each and every word may not always be accurately pronounced. On the other hand, one is able to write who, by the use of alphabetical signs, can express in a fairly legible way words in common use and of average difficulty, though each and every word may not be accurately spelled."

Applying this liberal rule to the proof in this case, we feel compelled to say that Tildie Short and Jane Honeycut, female voters, could not read and write, and were, therefore, not legal voters; and, that J. B. Witt and Maggie Witt, his wife, were legal voters.

Counsel for appellant concedes that Lee Egerson and Jane Honeycut were not legal voters, for the reasons above stated.

It results, therefore, that the eight illegal votes above specified will have to be deducted from the Williams column, leaving him only 26 votes.

3. Turning to the nine challenged voters who voted for Hays, it is contended that Julia Blair was a minor. Her father, however, testified that she was 21 years old in April, 1915; and, that he had kept a record of his children's ages in a bible, which had been lost or destroyed. This testimony of the father must prevail over the supposition and guesses of neighbors and those

not related. It is the best evidence in this instance. Combs v. Brewer, 169 Ky. 571.

The right of Lucinda Hays, the wife of the plaintiff, to vote is contested upon the ground of illiteracy. The proof, however, shows that she can read and write.

Floyd Sexton and John Sexton are brothers; and, while the attempt is made to show by neighbors and by the school census report that Floyd was born on February 6, 1897, and John on October 10, 1895, the mother of these boys, Rebecca Sexton, testified that Floyd was 21 years old in February, 1915, and that John was 23 years old in October, 1915. In the absence of better and more definite proof we will treat the testimony of the mother as controlling in cases of this character.

J. J. Hall, Jr., is contested upon the ground that he was a non-resident. The proof, however, does not sustain the claim.

The right of Mary Toliver, Hattie Stidman, Alice McIntosh and Amanda Hall to vote is contested, in each case, upon the ground of illiteracy. The proof, however, does not sustain this ground, in either case.

Our conclusion is, that the counter-claim against Hays has not been sustained, in any respect, and that he was entitled to the 32 votes which were given to him by the election certificate, as against the 26 votes for Williams, as above shown.

It results, therefore, that the circuit court properly found that Hays had been elected, and its judgment is affirmed.